Messrs. Ross and Wilkins, *pro quer.*

Mr. Memple, *pro def.*

*Alexander Wright and William Porter, [*562 plaintiffs in error *against* the lessee of John Small.

Warrants under the act of 3d April 1792, should contain a special description of the lands. A special entry in the books of the deputy surveyor cannot supply the defects thereof, nor is any one bound to take notice of such entry.

If an improvement is begun with an intent to make an immediate settlement, and prosecuted with due diligence till a settlement is completed, the title will relate to the first improvement. If delay takes place in the settlement, it lies on the improver to account for it in a reasonable manner.

Error to the Court of Common Pleas of Mercer county. A bill of exceptions had been filed on the trial of the cause on the 5th May 1808, which stated with great minuteness the written as well as parol testimony adduced on both sides, together with the charge of the court.

The general features of the case were as follows :

Small, the lessor of the plaintiff below, claimed the lands which lay N. and W. of the river Ohio, as well by actual settlement, as under three general warrants, taken out by the Pennsylvania Population Land Company, dated 14th April 1792, entered with Thomas Stokely, deputy surveyor of the district, on the 13th November 1794, and surveyed on the 6th June 1796. Small contracted with the company on the 13th November 1797, for such parts of the surveys made on the three warrants, as were included in a survey made for him in 1794 by John Kerr, under a supposed settlement.

It appeared that Small, in the fall of 1793, came upon the land, and deadened fifteen or sixteen trees, and in October 1794, built a small cabin thereon uncovered. In October 1795, he erected a new cabin, cleared about half an acre, fencing it with rails and brush, and sowed one half of it with timothy seed,

continuing there two or three weeks, and declaring his intention of making an actual settlement. He returned in May 1796, and cleared an additional half acre, and inclosed the whole with rails and brush, and planted it in corn and tobacco, and sowed turnips, which however yielded no produce. In October of the same year, he moved to the land with his family, and appeared emaciated by sickness, and continued in possession thereof until the time of the trial.

The defendant, Porter, also claimed as an actual settler, and under a warrant to Dorothy Wright, dated 16th December 1793, "for 400 acres, on the waters of Beaver creek, bounded by "lands of William Porter and others," on which a survey was made on the 7th May 1803. This warrant, with five others, was entered with the deputy surveyor on the 27th April 1795, when Alexander Wright, the owner of the warrants, required that the warrants should be specially entered in the books of the deputy, and desired that the warrant, in the name of Dorothy Wright, should be laid on the land surveyed as aforesaid by John Kerr, but his request was refused, and the warrants were entered according to their several locations.

Wright, and Porter his son in law, erected a cabin on the land 563*] *in controversy in May 1795, made between 300 and 400 rails, and deadened about one acre of ground. In March 1796, Porter came upon the land with his family, cleared and fenced four or five acres, and planted corn therein, raising during the season between 50 and 200 bushels of corn. About the 1st May 1796, Porter removed with his wife to the adjoining tract, taking thither all his household furniture except a large kettle. He planted corn that season, and during that time, he and his wife removed back to the place. Before harvest, they went to her father's house in Washington county, but he returned and worked occasionally on this land, pulled his corn and erected a new cabin. In April 1797, he returned with his wife from her father's, and lived in the cabin, which he had erected the preceding fall, (bringing with them their child about five weeks old, and she continuing in a weak state,) and progressed in cultivating the land and residing thereon. In the winter of 1798-9, he again took his wife to her father's in Washington, and worked at a distillery; she had a second child there, and they returned to the land early in the spring of 1799, and continued in possession ever since.

On the 9th April 1804, the Board of Property on a *caveat* filed by Alexander Wright against the population company decided that Wright had the first actual settlement.

And now the counsel for the plaintiffs in error took three exceptions to the opinion of the Court of Common Pleas.

1. The first error assigned was, that the court below admitted evidence of the improvements made by Small, before any testimony was given of residence or settlement.

This was said to be contrary to the practice of the Circuit

Court, and would lead to inconvenience. But it being consid-ered as a mere question of order, and that the fact of supposed residence was afterwards testified by the witness, the point was abandoned by the counsel.

2. The second error assigned was, that the court instructed the jury, that the owner of a general warrant could not make it special by requiring of the deputy surveyor to enter it specially ; that the deputy surveyor would not be authorized if required to enter it specially ; and if so entered, it would not thereby be rendered special, until a survey was made thereon.

On this point, the counsel of the plaintiffs in error contended that though the 3d section of the act of 3d April 1792, requires, that the warrants for lands north and west of the river Ohio, &c. "should contain a particular description of the land applied "for," yet it was well known, from the unexplored state of the country when the office opened, and other causes, that by far the greater part of the warrants issued did not conform thereto, *and had been sanctioned by courts of justice. 3 Dal. [*564 St. Laws 210. The object of the provision was, that the lands applied for being specifically described in the warrants, and so entered in the books of the surveyor of the district, should serve as a caution to actual settlers not to bestow their time and labour on lands previously appropriated, and to others not to take out warrants for such lands. If a warrant has a special designation, it will attach on those lands, and is notice to all the world ; but where is the difference in principle, when the appropriation of a general warrant is fixed by an entry in the books of the deputy surveyor of the district, to which all men have access ? It cannot be removed from thence, and is full and ample notice to all persons interested. The public sur-veyors are bound to follow the directions of warrantees, where it is evident that no injury is done to the state, or to third persons. A wrong legal principle has therefore been laid down by the presiding judge.

To this it was answered by the counsel of the defendant in error, that it was of the utmost consequence, that the provisions of the act should be adhered to. It was wholly silent, as to the owner of an indescriptive warrant rendering it special, by an entry in the books of the deputy ; and in this particular, the charge of the court was perfectly correct. Besides if it is com-petent even to our adversaries, to render a particular matter not contemplated by the legislature as notice in fact to actual set-tlers, how can it operate as notice to others, who at a great dis-tance from the surveyor's books, pay their money to the state for new warrants.

2d. If an indescriptive warrant should be entered with the deputy surveyor, with special directions as to its execution in the same book and before it is surveyed, a subsequent warrant specially and distinctly designating the spot intended by the

directions, should be put into his hands to be executed: can there be any hesitation in deciding which should be intitled to preference? A survey alone can identify the lands under a vague and general warrant.

3d. The error assigned was, that the case did not go fairly to the jury, under the charge of the court. To the latter, it belongs to tell the jury what the law is, but not to usurp their jurisdiction, in determining matters of fact. Here the jury were charged by the court, that Small made the first actual settlement on the lands in question; and that it did and ought to give him a title against all the general warrants issued and entered, but not surveyed before his final settlement commenced; and that the intention of Small to settle in October 1795, was sufficiently manifested when he built his cabin, without considering what had *been done in 1793. And that his actual settlement in October 1795, would relate to the improvement made with intention of settlement during the preceding fall, and was therefore preferable to the claim of the now plaintiffs in error.

A settlement is a mixed question of law and fact. It is agreed, that it must have a beginning, but it must be followed up; it must be continued from time to time according to existing circumstances. The deadening of a dozen trees gave no preference in 1793, and the survey made for Small by Kerr in 1794, was unauthorized, because there was no settlement to justify it. An uncovered cabin during that fall may be pronounced one of the most equivocal manifestations of an intention to settle. Hundreds of such cabins are to be met with in the woods, which have never been deemed to confer a title to the lands. It is true, that in October 1795, Small built a new cabin on the land, and made some slight improvements there, and that his family came to reside in May following. But it is no less certain, that the plaintiffs in error previously thereto in May 1795, erected their cabin, made near 400 rails, and deadened an acre of ground, and in March 1796, Porter and his family removed to the land, cleared four or five acres, and planted corn therein. So that, not only the cabin, but the actual improvements and settlement of the plaintiffs in error preceded those of the defendant.

The intentions of an improver must be shewn from his unequivocal acts, not from his declarations, which may be given in evidence not for him, but against him. If some certain rules are not laid down and adhered to, the titles under the act of 3d April 1793, must remain in a state of great insecurity.

The court also erred in this, that they gave it in charge to the jury, they must consider the controversy as a dispute between two actual settlers, independently of warrant rights; which operated most injuriously to the plaintiffs in error. If the counsel of Small had not thought very differently, they would never have shewn in evidence the warrants and surveys of the Population Company, their interferences with the survey made by

Kerr, and the contract made with that company. But what we most chiefly complain of under this head of exception, is, that instead of the court's giving their direction in point of law to the jury, and leaving the facts from which that law must arise to their decision, they determine both the law and fact themselves. Settlement or no settlement is a question of law; but the intention of settling, and the acts of following it up with due diligence, on which it must be founded, are matters of fact proper for the consideration of the jury.

The counsel of the defendant in answer hereto, urged, that it *was evident this was a dispute between actual settlers merely, provided there had been a settlement begun on [*566 either side prior to the surveys on the indescriptive warrants. And this was clearly the case here. But if priority of survey was to give the preference, then Small was entitled thereto ; because he deduced his claim under surveys made on the 6th June 1796, opposed to one of 7th May 1803.

It is of no moment what was the opinion of the court on questions of law upon facts not proved in evidence upon the trial.

The president may have expressed his sentiments strongly on the facts as proved to the satisfaction of the court ; and this is the daily practice both at the bar and on the bench in addressing juries : but having stated his ideas of the facts, he concluded his charge by saying, "if the jury however think differently, "and that Porter's title is prior to Small's, they will find for the "defendants." This necessarily implies, that the intention of either party as to making an immediate actual settlement, and the continuation thereof from time to time, were facts submitted to the decision of the jury. There was no contrariety of testimony, and consequently no question occurred respecting the credibility of witnesses. The evidence on both sides was heard and considered by the court and jury. When a judge sums up the evidence, and speaks of a fact being proved, he must be presupposed to mean, if the witnesses who attest the fact are worthy of credit ; and by reasoning on facts, assuming them to be proved, he does not invade the province of the jury.

It is submitted to the court here, that admitting the evidence on both sides to be true, the prior actual settlement was clearly shewn to be in Small. In the nature of things, a settlement cannot be effected at once ; it is composed of a number of progressive points. The great criterion is, that the party shall, when he commences to improve, have an intention of making an immediate settlement, as a means of supporting himself and his family. His real intent is to be collected from his expressions as well as actions. He must personally reside on the land, which must be continued from time to time, when existing circumstances will admit of it. The validity of a settlement does not depend on the extent of the clearing, or the produce raised from it, but on the *animo residendi :* and when this intent is

fully ascertained, the title will be carried back by relation to the first act, however slight or slender it may be deemed standing alone. Judging by these rules, the court's deductions from the whole evidence, that Small had the first actual settlement on the lands in dispute, were manifestly correct.

He began to improve by making a small deadening in 1793, erected a cabin in 1794, and obtained a survey by a regular *officer; built a new cabin in 1795, clears and fences a half acre, and sows timothy seed, staying out there some weeks. At this time he is solicited to sell his claim, which he utterly refused to do, and repeatedly declares his unequivocal intention to make a permanent settlement. He returned in the spring of 1796, added to his clearing, sowed and planted. In the course of that summer he and his wife fell sick, but in the month of October 1796, he brought her out upon the land, himself in a weak and emaciated state, and he has continued to reside there ever since.

Small first added his labours to the soil, and violated no man's claim. His cabin was first built, and Wright must have known of his survey from his requisition to the surveyor of the district. His possession was more continued than that of his adversaries. He neither resided on another farm, nor went into the settled country to carry on his trade.

When the claims of the contending parties are fairly contrasted, it is apprehended that there will be little difficulty in asserting, that the verdict given for the plaintiff below, was strictly agreeable to the right and justice of the case.

TILGHMAN, C. J. delivered the opinion of the court. This cause is brought before us, on a writ of error to the Court of Common Pleas of Mercer county. The bill of exceptions contains a long detail of evidence, after which is inserted the charge of the president to the jury; which the plaintiffs in error alledge to be erroneous in several particulars.

The land in dispute, lies N. W. of the river Ohio. The defendant in error, who was the plaintiff below, claimed under a warrant, and also under a settlement right. The plaintiffs in error claimed under a warrant, which contained a vague description, and was laid upon land different from that which the warrant called for. At the time of entering this warrant in the book of the deputy surveyor, a special entry was made, describing the place intended to be surveyed.

It was contended by the defendants below, that the special entry was notice to all the world, and amounted in law to an appropriation of the land intended to be surveyed. The president declared in his charge, that the nature of the warrant could not be altered by a special entry, and that there was no appropriation of the land before survey. This is the first alledged error.

. The warrant issued under the act of 3d April 1792, entitled

"an act for the sale of the vacant lands within this common-
"wealth." The third section directs, that the warrant should
contain a particular description of the land applied for; and by
the fourth section, the deputy surveyor, who should receive any
*warrant, was required to make a fair and clear entry of      [*568
it in a book to be provided for that purpose, in order that
all persons who apply for lands, may be informed of the warrants
which have been issued. It was the duty of every person who
applied for a warrant, to give a particular description of the
land; and if this was omitted, it could not be supplied by an
entry in the book of the deputy surveyor. The law directs no
entry of any thing but the warrant, and if an entry not author-
ized by law is made, nobody is bound to take notice of it. This
court are therefore of opinion, that there is no error in the
judge's charge on that point.

There is only one other assignment of error, of which we
think it necessary to take notice. It is this; that the president
told the jury, that John Small's actual settlement in 1795, "will
"relate to his improvement in 1794."

As some difference seems to prevail among the gentlemen of
the bar, respecting former decisions of judges of this court, sit-
ting at Nisi Prius and in Circuit Courts, we think proper to
express our sentiments explicitly on the subject in question. If
an improvement is begun with an intent to make an immediate
settlement, and prosecuted with due diligence, till a settlement
is completed, the title relates to the commencement of the im-
provement. It is essential that there should be an intention of
immediate settlement. An improvement made with a view of
appropriating land for the purpose of sale, or of future settle-
ment, is of no avail. The intent must be collected from the
conduct of the person. If a small improvement is commenced,
and a considerable delay takes place before there is any residence,
it lies on the improver to account for it in a reasonable manner.
Much will depend on the situation of the country, with respect
to danger from an enemy, the difficulty or facility of procuring
provisions, the health of the improver and his family, and a vari-
ety of circumstances, which must be judged of, as they are
brought forward. It appears to us, that the president of the
Court of Common Pleas, ought to have stated the law in this
manner to the jury, and that he went too far in deciding, that
the title of the plaintiff below commenced in 1794. Whether it
commenced then, depended on his intent at the time he made
his little improvement in that year, and on the reasonableness
of the causes alledged for the delay of residence. Of these
things the jury should have been directed to judge; and they
should have been told, that according to their opinion on these
points, the settlement would commence in 1794 or not. It is
true, that the president in the conclusion of his charge told the
jury, that if they thought differently from him, they might find
differently. But having told them what the law was, it became

their duty to take *it so, and not to differ from him ; because the court are to decide the law, and the jury the fact.

We are therefore of opinion, that the judgment of the Court of Common Pleas be reversed, and a *venire facias de novo* be awarded.    Concerning the merits of the cause, we think it improper to express any opinion.

Cited in 3 P. & W. 436 to show that an improvement, in order to be available in law, so as to give a pre-emption right to land, must be commenced with intent to make an immediate settlement, and prosecuted with due diligence till the settlement is completed, and if done so, the title so acquired, will relate back to the commencement of the improvement.   Cited for the same purpose in 2 Pa. 349.

Referred to in 1 Watts 101.